# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **LORI M. SLUSS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:10CV00047 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By: James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Lewey K. Lee, Lee & Phipps, P.C., Wise, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III; Kimberly Varillo, Assistant Regional Counsel, Maija DiDomenico, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this Social Security disability case, I affirm the final decision of the Commissioner.

I

Plaintiff Lori M. Sluss filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits and social security income benefits pursuant to Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§ 401-433, 1381-1383d (West 2003

& Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A.§ 405(g) and 1383(c)(3).

Sluss filed for benefits on August 2, 2006, alleging disability since March 18, 2006, due to fibromyalgia, dizziness, weakness, numbness, shaking, headaches, carpal tunnel, pain, and fatigue. Her claim was denied initially and upon reconsideration. Sluss received a hearing before an administrative law judge ("ALJ"), during which Sluss, represented by counsel, and an impartial vocational expert testified. The ALJ denied Sluss' claim and the Social Security Administration's Appeals Council denied her Request for Reconsideration. Sluss then filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is ripe for decision.

II

Sluss was twenty-nine years old when she filed for benefits, a person of younger age under the regulations. *See* 20 C.F.R. § 404.1563(c) (2010). Sluss, who has a high school education, has previously worked as an industrial

construction baler, a cleaner, and a cook/cleaner/stocker. Sluss has not engaged in substantial gainful activity since March 2006.

In January 2006, Sluss presented to J. Bryston Winegar, M.D., with the Holston Medical Group, complaining of pain and parathesia in her arms and legs, lightheadedness, muscle pain, and lack of energy. Dr. Winegar could not make an initial determination of Sluss' symptoms and ordered a panel of diagnostic studies. Dr. Winegar continued to see Sluss on a three-month basis through January 2009, and while she reported continued numbness and pain with mild improvements, Dr. Winegar never found her in acute distress.

In May 2006, following a consultative appointment with neurologist R. Scott Macdonald, M.D., Dr. Winegar opined that Sluss might suffer from either chronic fatigue syndrome or a fibromyalgia-type syndrome. Lab results in June and July 2006 were unremarkable, and Dr. Winegar again noted that Sluss' symptoms were of uncertain etiology, diagnosing questionable fibromyalgia and depression. Sluss was examined by a rheumatologist, Ghaith Mitri, M.D., in July and August 2006 who found several fibromyalgia tender points, but nothing suggestive of an autoimmune connective tissue disease or arthritis. In follow-up appointments through October 2007, Dr. Winegar recommended Sluss remain on her continued medicative regimen, but made no recommendations for psychiatric treatment.

At the request of Sluss' counsel, Dr. Winegar wrote a letter in April 2008, noting diagnoses of persistent fatigue and diffuse myalgias and paresthesias in her arms as legs, as well as severe anxiety and panic disorder, but that "no specific diagnosis" had been made other than "probable fibromyalgia and panic disorder and anxiety." (R. at 300.) Dr. Winegar additionally noted that multiple evaluations had been "nonrevealing," but opined that Sluss had been totally disabled since January 2006, despite a total lack of formal health testing or a formal physical capacity evaluation. (*Id.*) However, Dr. Winegar also contradicted this opinion, stating that he did not "have the data to support or to render an opinion" on "many of the issues raised on the mental status functional capacity and physical functional capacity forms" required for an application for social security benefits. (*Id.*)

In March and June 2007, two state agency physicians reviewed Sluss' records and completed physical residual functional capacity assessments. Both physicians found that Sluss retained the abilities to perform a full range of medium work. Each additionally concluded that Sluss' statements regarding her symptoms and the effects of her symptoms were only partially credible.

Although Sluss never sought formal mental health treatment before filing her current application, her claims of mental limitations were also reviewed by two state agency psychologists. Both psychologists opined that Sluss suffered from no

severe mental impairments, and that Sluss experienced no more than mild limitations in her activities of daily living, maintaining concentration, persistence, or pace. Neither reviewing psychologist found repeated episodes of decompensation, and at least one of the reviewing psychologists questioned Sluss' credibility based on the fact that Sluss had never sought outpatient treatment for her mental health complaints.

In May 2008, Sluss presented to Donna Abbott, M.A., for a consultative examination in preparation for her current application. Sluss reported no periods of hospitalization, no history of psychiatric treatment by a psychiatrist or a mental health center, and responded unremarkably to the standard panel of consultative tests. Although Sluss visibly shook during the examination, Dr. Abbott and her staff noted that the periods of shaking were inconsistent and noticeably limited to the period she was in the office before the examiner. Dr. Abbott assessed Sluss with a global assessment of functioning ("GAF") score of 60, indicating mild to moderate impairment in social and occupational functioning.[1] Dr. Abbott opined that Sluss

---

[1] The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in social, occupational, or school functioning. See Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

had no limitations in understanding, remembering, or carrying out simple instructions; making judgments on simple work-related decisions; and only mild restrictions in her abilities to make complex work-related decisions. Dr. Abbott further assessed mild limitations in Sluss' ability to interact appropriately with the public, supervisors, or co-workers.

After reviewing Sluss' records, the ALJ determined that Sluss' "probable fibromyalgia" was a severe impairment, but not one that met or medically equaled one of the listed impairments under the Act. (R. at 12, 14.) The ALJ additionally determined that Sluss had "no severe mental impairment established by credible evidence." (R. at 14.) Taking into account Sluss' limitations, the ALJ determined that Sluss retained the residual functional capacity to perform the full range of medium work, including her past relevant work. Based on these findings, the ALJ concluded that Sluss was able to perform past work and was therefore not disabled under the Act.

Following the ALJ's unfavorable decision, Sluss requested review and submitted additional evidence to the Appeals Council for consideration. This evidence consisted of a medical assessment to do physical work-related activities form and a mental work-related activities form filled out by Dr. Winegar in January 2009. Despite Dr. Winegar's April 2008 letter where he indicated he lacked the

data to assess many of the issues contained in these forms, Dr. Winegar completed the January 2009 forms fully. Dr. Winegar assessed that Sluss could occasionally lift or carry ten pounds; frequently lift or carry five pounds; sit for two hours in an eight-hour workday; and sit for six hours in an eight-hour workday. He limited Sluss' abilities to climb, balance, crouch, or crawl, but found that she could occasionally stoop or kneel. He indicated further restrictions in Sluss' abilities to reach, handle, feel, push or pull, due to polyneuropathy.

Although Dr. Winegar is not a trained psychiatrist, he also assessed Sluss' mental work-related activities. Dr. Winegar diagnosed Sluss with panic disorder with agoraphobia, finding she retained poor to no ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, function independently, or maintain attention and concentration. Dr. Winegar opined that Sluss retained only a fair ability to follow work rules or use judgment with the public. The Appeals Council considered this new evidence, but denied review.

Sluss argues the ALJ's decision is not supported by substantial evidence. For the reasons detailed below, I disagree.

III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2010). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868–69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared

with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

My review is limited to a determination of whether there is substantial evidence to support the Commissioner's final decision and whether the correct legal standard was applied. 42 U.S.C.A. § 405(g); *see Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). This standard "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. It is not the role of this court to substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

In Sluss' current appeal, she argues that the ALJ failed to properly evaluate the impact of her physical and mental impairments on her ability to work, and thus,

that substantial evidence did not support the ALJ's conclusion that she was not disabled.

The ALJ has the exclusive authority to evaluate medical opinions in the record and, when assessing the weight given to a medical opinion, the ALJ should consider whether the opinion is supported by laboratory findings and the record as a whole. 20 C.F.R. § 404.1527 (2010). When considering what weight to give an opinion, an ALJ must consider the length of a treatment relationship, the frequency of the examination, and the nature and extent of the treatment relationship. 20 C.F.R. §§ 404.1527, 416.927 (2010). In addition, the weight given to an opinion by an ALJ may also depend upon whether the opinion is consistent with the record as a whole. 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) (2010).

Unlike many of the Social Security appeals that come before this court, here the evaluations of Sluss' physical impairments by her treating physician, consultative examinations, as well as the evaluations performed by state agency doctors, are markedly consistent. All the opinions in the case recognize that Sluss likely suffers from a non-determinable form of fibromyalgia or polyneuropathy, but that no medical assessment has been able to firmly diagnose her condition or the extent of her impairments. As to her mental complaints, Sluss' alleged impairments have never been severe enough such that formal psychiatric treatment

was ever medically recommended by Sluss' treating sources or personally sought by Sluss herself.

Additionally, several of Sluss' treating sources and the reviewing state agency physicians or psychologists questioned her credibility. The ALJ similarly found Sluss to be less than credible. As I must, I defer strongly to the ALJ's assessments of the claimant's credibility.

Accordingly, the ALJ found that Sluss was not disabled under the Act, because her physical and mental limitations, to the extent these complaints could be medically determined or verified, did not preclude her from performing her relevant past work. I find that substantial evidence exists to support the ALJ's decision.

IV

Alternatively, Sluss contends that the latest records submitted before the Appeals Council warrant a remand because they are new and material to her claim of disability. This argument also fails.

Because the Appeals Council considered Sluss' additional evidence before denying her request, this court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d

93, 96 (4th Cir. 1991) (en banc). "This task is a difficult one, since in essence the court must review the ALJ's decision — deemed the final decision of the Commissioner — in the light of evidence which the ALJ never considered, and thus never evaluated or explained." *Ridings v. Apfel*, 76 F. Supp. 2d 707, 709 (W.D. Va. 1999). It is the role of the ALJ, not this court, to resolve evidentiary conflicts, including inconsistencies in the evidence. *See Hays*, 907 F.2d at 1456. Thus, this court needs to carefully balance its duty to review the entire record with its obligation to abstain from making factual determinations. *See Davis v. Barnhart*, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005).

"Previous courts have navigated this fine-line by limiting the analysis of the additional evidence, focusing the inquiry on the narrow question of whether the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports." *McGinnis v. Astrue*, 709 F. Supp. 2d 468, 471 (W.D. Va. 2010) (citation and internal quotation marks omitted). If the evidence does create a conflict, then the case is remanded for the Commissioner to weigh and resolve the conflicting evidence. *Id*.

I find that while the new physical and mental assessment forms do conflict with the prior evidence of record, these new assessments are less than credible. The same physician to fill out those forms, Dr. Winegar, noted in his April 2008 letter

that he did not have sufficient data to render an opinion on many of the issues raised in those forms, despite almost two years of intermittent treatment of the claimant. Although no evidence exists on the record that Dr. Winegar continued to see Sluss past April 2008, he completely changed his assessment in January 2009, opining that Sluss was severely limited in multiple spheres, both physically and mentally, and that she was permanently disabled. This court need not credit assessments that are wholly unsupported by the objective medical evidence and the treating source's own records. *See* 20 C.F.R. §§ 404.1527(d) (4); 416.927(d) (4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.") Finally, this court need not credit Dr. Winegar's determination as to Sluss' disability status, as this is an issue specifically reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). Consequently, I find that this new evidence does not credibly call into question the previous findings of the ALJ and the Appeals Council, both of which were properly supported by substantial evidence.

V

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A

final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED: April 10, 2011

　/s/　 JAMES P. JONES
United States District Judge